COOPER LEVENSON, P.A.
1415 Marlton Pike East
Cherry Hill Plaza, Suite 205
Cherry Hill, NJ 08034
(856) 795-9110; Fax: (856) 795-8641
By: William P. Rubley, Esq. (I.D. No. 207054)
Trevor R. Waldron, Esq. (I.D. No. 330759)
wrubley@cooperlevenson.com
twaldron@cooperlevenson.com
*Counsel for Defendants BMM North*
*America, Inc. and Peter Nikiper*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

POM OF PENNSYLVANIA, LLC,

           Plaintiff,

    v.

BMM NORTH AMERICA, INC.,
and PETER NIKIPER,

           Defendants.

_____

:
:
: Case No. 1:23-CV-00579-JPW
: (Hon. Jennifer P. Wilson)
:
:
: CIVIL ACTION
:
:
:
:
:
:
:

### DEFENDANTS BMM NORTH AMERICA, INC.'S AND
### PETER NIKIPER'S MOTION TO DISMISS AMENDED COMPLAINT

1.     NOW COMES, Defendants BMM North America, Inc. ("BMM") and

Peter Nikiper ("Nikiper") (collectively "Defendants"), by and through their counsel,

the law firm of Cooper Levenson, P.A., hereby moves to dismiss Plaintiff POM of

Pennsylvania, LLC's ("Plaintiff" or "POM of PA") Amended Complaint, ECF No.

14, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

2.      The Motion to Dismiss is based upon the pleadings and papers filed herein, the attached Memorandum of Law, and oral argument to be made by Counsel at any hearing held on this matter. For these reasons and the reasons set forth in the accompanying brief, Defendants request that this Honorable Court grant the Motion to Dismiss and dismiss Plaintiff's Amended Complaint with prejudice.

3.      Defendants BMM North America, Inc. ("**BMM**") and Peter Nikiper ("**Nikiper**") (collectively "**Defendants**"), by and through their counsel, the law firm of Cooper Levenson, P.A., submit this Memorandum of Law in support of Defendants' Motion to Dismiss Plaintiff, POM of Pennsylvania, LLC's ("**Plaintiff**" or '**POM of PA**"), Amended Complaint (the "**Amended Complaint**"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

4.      The Amended Complaint fails to state a claim upon which relief may be granted and should be dismissed as:

a. Defendants are immune from suit under the Witness Immunity Doctrine by virtue of their status as expert witnesses retained by the Commonwealth;

b. Defendants' conduct as expert witnesses for the Commonwealth is protected by statutory exceptions contained in the Computer Fraud and Abuse Act as it was expressly authorized by the Commonwealth and the Court in the Dauphin County Action (as defined below); and

c. Plaintiff has otherwise failed to state a claim under the Computer Fraud and Abuse Act. For the following reasons, dismissal of the Amended Complaint, with prejudice, is warranted.

I. STATEMENT OF FACTS

A. Relevant Factual Background

5. The facts contained in this Motion to Dismiss are taken directly from the Amended Complaint and presumed to be true for the purposes this Motion to Dismiss only. See *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

6. Defendant BMM is a corporation organized under the laws of the State of Nevada operating as an independent testing laboratory specialized in gaming. Amended Complaint at ¶ 2, ECF No. 14.

7. Defendant Peter Nikiper is an employee of BMM and its Director of Technical Compliance. Amended Complaint at ¶ 4. Plaintiff POM of Pennsylvania, LLC is a company organized under the laws of the State of Wyoming. Amended Complaint at ¶ 1.

8. POM of PA is owned by parent company Pace-O-Matic, Inc. Amended Complaint at ¶ 21.

9. Defendants, according to Plaintiff, are under contract to perform testing for the Pennsylvania Gaming Control Board and, provide services to most of the

major manufacturers in the gaming industry and prepare reports for these manufacturers designed for the PGCB. Amended Complaint at ¶¶ 3, 112.

**The POM Games**

10.     According to Plaintiff, it distributes electronic games, which it classifies as games of skill (the "**POM Games**"). Amended Complaint at ¶ 9. Additionally, according to Plaintiff, the POM Games "offers the skillful player the ability to win, on every play, at least 105% of the player's consideration." Amended Complaint at ¶ 11.

11.     Plaintiffs admit that "[s]ometimes, the skillful player may correctly solve the puzzle and be awarded more than the amount of funds/points committed or be directed to a bonus game that has the same outcome." Amended Complaint at ¶ 13.

12.     Additionally, according to Plaintiff, "on every play, if the skillful player solves the puzzle correctly but does not win more than the funds/points committed for play, the player is offered the ability to play the 'Follow Me' stage of the game" which "[i]f the player completes the pattern correctly, the player wins 105% of the funds/points committed." Amended Complaint at ¶¶ 14-15.

13. POM of PA places the POM Games in bars, restaurants, and convenience stores through in-state operators. Amended Complaint at ¶ 18.

**POM of PA's Alleged Confidential Business Information**

14. Plaintiff contends that the POM Games' intellectual property was developed by parent company Pace-O-Matic, Inc and contains several components relevant to this action. Amended Complaint at ¶¶ 21, 23. Specifically, according to Plaintiff, these components include the Hard Drive, which contains the following: (1) several sets of data and software stored in several data partitions, (2) the Linux Unified Key Setup encrypted Excusable File, (3) several un-encrypted data partitions, and (4) a boot loader. Amended Complaint at ¶¶ 25, 27-28, 29-30, 47, 53.

15. Additionally, Plaintiff contends that another relevant component is the Dongle, which contains "highly confidential data that play an integral part in the decryption process that allows the Skill Game to access the Executable File during ordinary operation." Amended Complaint at ¶ 55, 57.

16. According to Plaintiff, it also created the Dongle Firmware. Amended Complaint at ¶ 70. Consequently, Plaintiff contends that all of the components listed above constitute confidential information and are not disclosed to in-state operators of POM Games. Amended Complaint at ¶ 84.

**The Bureau of Liquor Enforcement's Seizure of POM Games**

17.    On December 9, 2019, agents from the Pennsylvania State Police Bureau of Liquor Enforcement seized three POM Games from Champions Sports Bar, LLC in Dauphin County, Pennsylvania. Amended Complaint at ¶ 92. The POM Games, according to Plaintiff, were seized without a warrant and no criminal charges were filed as a result of the seizure. Amended Complaint at ¶ 93.

18.    However, in the underlying Dauphin County action, Judge Dowling noted "[w]e did not hear testimony about the lawfulness of the seizure, and Petitioners did not address this issue in their Proposed Findings of Fact and Conclusions of Law. As such, we will not discuss it herein." *See In re Three Pa. Skill Amusement Devices,* No. 2022-CV-06333, 2023 Pa. Dist. & Cnty. Dec. LEXIS 39, at *2 n. 1 (Ct. Com. Pl. Dauphin Mar. 23, 2023)("**Dauphin County Action**").

**The Commonwealth Retains and Directs BMM to Examine and Analyze the POM Games**

19.    Plaintiff contends that Defendants conducted an unauthorized inspection of the POM Games in preparation of their expert report (the "**BMM Report**"). Amended Complaint at ¶ 99, *See also* Exhibit G to Amended Complaint, The BMM Report.

20.    According to Plaintiff, "BMM had no plausible basis to believe that it had authorization or consent to take these actions." Amended Complaint at ¶ 109. Yet, BMM and Mr. Nikiper were retained by the Commonwealth to act as expert

witnesses, and expressly directed to examine and analyze the POM Games. *See* Exhibit I to Amended Complaint, Transcript of November 22, 2022 Hearing (11/22/22 Tr.) at 148:2-16.

21.     At the direction of the Commonwealth, Defendants conducted an analysis of the POM Games and prepared the BMM Report for the Commonwealth. *Id*. at 148:2-6. The BMM Report detailed Defendants' examination of the POM Games, utilizing terms such as boot loader and encryption specification. Amended Complaint at ¶¶ 102-03.

22.     Importantly, The BMM Report states that due to time constraints, Defendants were unable to conduct an investigation to decrypt the partition and review the program that runs the device. BMM Report at 4.

23.     Additionally, according to Plaintiff, "BMM accessed, acquired, and examined the Dongle, its mode of communication, the Dongle Design Specifications, and the Dongle Firmware." Amended Complaint at ¶ 104. However, again, according to the BMM Report, "due to time constraints at this point, further investigation on what the security dongle does was not able to be conducted." Amended Complaint at ¶ 105, The BMM Report at 5.

### The Underlying State Court Action in Dauphin County, Pennsylvania and Testimony of Mr. Nikiper

24.     On August 23, 2022, Champions Sport Bar, LLC and Capital Vending, Inc. filed a petition for return of property in the Court of Common Pleas of Dauphin

County (i.e. the Dauphin County Action). Amended Complaint at ¶ 95. The Petition sought relief on the grounds that the seizure did not satisfy the requirements of 42 Pa.C.S. § 5803(B), and that the POM Games are games of skill (not gambling devices) and therefore the seized property is not contraband. *Id.*

25.    In response, the Pennsylvania Office of Attorney General filed an Answer. Amended Complaint at ¶ 96.

26.    On September 30, 2022, the Court of Common Pleas for Dauphin County held an evidentiary hearing and after the testimony of a Commonwealth lay witness, the evidentiary hearing was continued until November 22, 2023. Amended Complaint at ¶¶ 97-98.

27.    After the original hearing date, the court in the Dauphin County Action, entered a scheduling order ("**Scheduling Order**") (attached hereto as Exhibit B) specifically permitting the Commonwealth to serve an "expert report by November 4, 2022." See Exhibit B.[1] On November 4, 2022, the Commonwealth summited the BMM Report. Amended Complaint at ¶ 99.

28.    On November 22, 2022, the Court of Common Pleas for Dauphin County held the second day of the evidentiary hearing, where Mr. Nikiper testified

---

[1]    Ordinarily, when considering a Motion to Dismiss, the Court does not look beyond the four corners of the complaint. However, the Court can take notice of "matters of the public record" such as an order entered in a different proceeding. See *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

as an expert witness for the Commonwealth. Amended Complaint at ¶ 115. During his testimony, Mr. Nikiper discussed his analysis of the POM Games and his preparation of the BMM Report.

29. According to Plaintiffs, Mr. Nikiper left forensic copies of the POM Game software unattended at his home. Amended Complaint at ¶ 131.

30. However, contrary to Plaintiff's contentions, Mr. Nikiper's testimony makes clear that the forensic copies Plaintiff references were copied solely for his use at the evidentiary hearing and in his direct control at his home immediately prior to flying to Pennsylvania to give testimony before the Court of Common Pleas of Dauphin County. Exhibit I to Amended Complaint, Transcript of November 22, 2022 Hearing (11/22/22 Tr.) at 293:19-22.

31. Additionally, Mr. Nikiper "testified that he reviewed the three Skill Games seized from Champions as well as a number of other seized Skill Games in possession of the Pennsylvania State Police." Amended Complaint at ¶ 117.

32. Mr. Nikiper also testified that he was unable to access the encrypted partition and that he made a request to the Pennsylvania State Police to have one of the dongles in PSP's possession sent to him. Amended Complaint at ¶ 123. The Pennsylvania State Police sent Mr. Nikiper three security dongles, two in sealed evidentiary envelopes and one in a white envelope. Amended Complaint at ¶ 125.

33.     The Pennsylvania State Police instructed Mr. Nikiper to do what he needed to do with the third dongle, which was related to a Lafayette County case and was allegedly forfeited to the Commonwealth. Amended Complaint at ¶ 125; Exhibit I to Amended Complaint, Transcript of November 22, 2022 Hearing (11/22/22 Tr.) at 177:20-25. Mr. Nikiper never opened the first two sealed dongles. *Id.* at 177:20-25.

### B. Procedural History

34.     On April 5, 2023, Plaintiff initiated the instant action by filing the Complaint. ECF No. 1. On April 11, 2023, Defendants received the Waiver of the Service of Summons and on April 27, 2023, the Waiver of Service of Summons was docketed. ECF Nos. 12, 13. On May 9, 2023, Plaintiff filed the Amended Complaint. ECF No. 14. Defendants now move to dismiss this action.

## II.    LEGAL STANDARD

35.     To the extent the Plaintiff's Amended Complaint arises out of or relates to BMM and Mr. Nikiper's expert opinion and expert testimony, it fails to state a claim upon which relief may be granted. Both BMM and Mr. Nikiper were retained as expert witnesses by the Commonwealth of Pennsylvania and enjoy witness immunity from any statements or conduct related to their retention.

36.     Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). "When disposing of a motion to dismiss, the Court 'accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff].'" *Jean v. Bucknell Univ.*, 534 F. Supp. 3d 404, 410 (M.D. Pa. 2021) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008)).

37.    "To survive such a motion, a plaintiff must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Presque Isle Colon & Rectal Surgery v. Highmark Health*, 391 F. Supp. 3d 485, 495 (W.D. Pa. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A facially plausible claim may not be supported by conclusory allegations." *Brzozowski v. Pa. Tpk. Comm'n*, 165 F. Supp. 3d 251, 258 (E.D. Pa. 2016) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

38.    "A claim is facially plausible when the plaintiff pleads sufficient facts for a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Presque Isle*, 391 F. Supp. 3d at 295-96. "In determining whether a complaint states a plausible claim for relief, the reviewing court must draw on its judicial experience and common sense." *Id*. at 296.

39.    In determining the sufficiency of a complaints' allegations, the Third Circuit has identified three steps a court must take when disposing of a Rule 12(b)(6) motion: "(1) identify the elements a plaintiff must plead to state a claim; (2) discard

any conclusory allegations contained in the complaint not entitled to the assumption of truth; and (3) determine whether any well-pleaded factual allegations contained in the complaint plausibly give rise to an entitlement to relief." *Liberty Mut. Co. v. Gemma*, 301 F. Supp. 3d 523, 534 (W.D. Pa. 2018) (internal quotation marks omitted) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

40.     Additionally, when ruling on a motion to dismiss, the Court may 'consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents.'" *Sylva v. Ude*, No. 5:21-cv-04102, 2022 U.S. Dist. LEXIS 19435, at *5 (E.D. Pa. Feb. 3, 2022) (quoting *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010)).

## III.   ARGUMENT

41.     Plaintiff asserts statutory claims under the Computer Fraud and Abuse Act, 18 U.S.C. §1030, (the "**CFAA**") (Count I), the Pennsylvania Consumer Protection Against Computer Spyware Act, 73 P.S. §§2330.1 *et seq.* (the "**Computer Spyware Act**") (Count III), and the common law claim for misappropriation and misuse of confidential business information (Count II).

42.     Defendants now move to dismiss Plaintiff's statutory and common law claims: (1) Plaintiff is unable to state a claim, whether statutory or common law, because Defendants are immune from civil liability given their status as expert

witnesses in the underlying Dauphin County Action for the Commonwealth of Pennsylvania, (2) Defendants are immune from civil liability pursuant to a statutory exception enumerated in the CFAA because Defendants were lawfully authorized to conduct an examination and investigation of the POM Games for the Dauphin County Action, and (3) the Amended Complaint fails to state a claim under the CFAA.

## A. Expert Witness Immunity Doctrine Warrants Dismissal.

43.    In short, both BMM and Mr. Nikiper were retained as expert witnesses and therefore enjoy expert witness immunity for conduct relating to that retention. To determine the adequacy of a complaint's allegations under Rule 12(b)(6), "a court should: (1) identify the elements of the claim(s); (2) review the complaint to strike conclusory allegations; and (3) consider whether the well-plead components of the complaint and evaluate whether all elements previously identified are sufficiently alleged." *Mifflinburg Tel., Inc. v. Criswell*, 80 F. Supp. 3d 566, 569 (M.D. Pa. 2015) (citing *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)).

44.    "A claim is not facially plausible unless it has factual content sufficient to allow a court to reasonably draw the inference that defendant is liable for the alleged misconduct." *FP 104 Corp. v. Columbia Cas. Co.*, No. 13-4077, 2014 U.S. Dist. LEXIS 24215, at *9 (D.N.J. Feb. 26, 2014) (citing *Iqbal*, 556 U.S. at 670).

45.    Plaintiff's Complaint fails to state a claim upon which this Court may grant relief. BMM and Mr. Nikiper, as expert witnesses retained by the Commonwealth of Pennsylvania, are immune from civil liability. The primary purpose of expert testimony is to assist the factfinder in discerning complicated matters. In *Briscoe v. Lahue*, 460 U.S. 325 (1983), the Supreme Court of the United States recognized the importance of unobstructed expert witness testimony to judicial proceedings, succinctly explaining:

> The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law. *Cutler v. Dixon*, 4 Co. Rep. 14b, 76 Eng. Rep. 886 (Q. B. 1585); *Anfield v. Feverhill*, 2 Bulst. 269, 80 Eng. Rep. 1113 (K. B. 1614); *Henderson v. Broomhead*, 4 H. & N. 569, 578, 157 Eng. Rep. 964, 968 (Ex. 1859); see *Dawkins v. Lord Rokeby*, 4 F. & F. 806, 833-834, 176 Eng. Rep. 800, 812 (C. P. 1866). Some American decisions required a showing that the witness' allegedly defamatory statements were relevant to the judicial proceeding, but once this threshold showing had been made, the witness had an absolute privilege. The plaintiff could not recover even if the witness knew the statements were false and made them with malice
>
> In the words of one 19th-century court, in damages suits against witnesses, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Calkins v. Sumner*, 13 Wis. 193, 197 (1860). A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. *See Henderson v. Broomhead*, supra, at 578-579, 157 Eng. Rep., at 968. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. *See Barnes v. McCrate*, 32 Me. 442, 446-447 (1851). Even within the constraints of the witness' oath there may be various ways to give an account or to state an opinion. These alternatives may be more or less detailed and may differ in

-14-

emphasis and certainty. A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence. *See* Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum. L. Rev. 463, 470 (1909). But the truth finding process is better served if the witness' testimony is submitted to "the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies." *Imbler v. Pachtman*, 424 U.S. 409, 440 (1976) (WHITE, J., concurring in judgment)

*Id.* at 331-43.

46.    Additionally, in *LLMD of Michigan, Inc. v. Jackson-Cross Co.*, 740 A.2d 186, 191 (Pa. 1999), the Supreme Court of Pennsylvania acknowledged the significance of witness immunity in state court actions, noting that "the two-fold policy of the [witness immunity] doctrine [] [is] to ensure that the path to the truth is left as free and unobstructed as possible and to protect the judicial process." The Court reiterated "[t]he reasons for the absolute privilege are well recognized . . . . [t]he privilege is [] extended to parties to afford freedom of access to the courts, **to witnesses to encourage their complete and unintimidated testimony in court**, and to counsel to enable him to best represent his client's interests." *Id*. at 187-89 (emphasis added).

47.    "Pennsylvania courts have held that there is no civil cause of action based on testimony given during a judicial proceeding, even if the

testimony was false." *Handfield v. Howell*, No. 1479 EDA 2019, 2020 Pa. Super. Unpub. LEXIS 498, at *11 (Pa. Super. Feb. 11, 2020) (citing *Ginsburg v. Halpern*, A.2d 201, 202 (Pa. 1955)). "Under the doctrine of witness immunity, private witnesses, as well as counsel, are absolutely immune from damages liability for testimony, albeit false, given or used in judicial proceedings such that the false statements would not be actionable." *Id.* at *11 - *12 (internal quotation marks omitted) (quoting *Pelagatti v. Cohen*, 370 Pa. Super. 422, 536 A.2d 1337, 1342 (Pa. Super. 1987)).

48.    Additionally, the Eastern District of Pennsylvania has noted that "[u]nder Federal Rule of Evidence 501 and Pennsylvania law, as a general rule, there is no civil liability for statements made in the pleadings or during trial or argument of a case so long as the statements are pertinent." *Hoffman v. Rashid*, No. 07-3159, 2009 U.S. Dist. LEXIS 120708, at *15 (E.D. Pa. Dec. 28, 2009) (internal quotation marks omitted) (quoting *Gatter v. Zappile*, 54 F. Supp. 2d 454, 457 (E.D. Pa. 1999)).

49.    The witness immunity doctrine also protects witnesses from civil liability for statements and communications made **in preparation** for judicial proceedings. *See Atiyeh v. Frederick Grp., LLC*, No. 2482 EDA 2018, 2019 Pa. Super. Unpub. LEXIS 3099, at *2 n. 2 (Pa. Super. Aug. 15, 2019) ("The

witness immunity doctrine insulates witnesses from civil liability for statements made during or in preparation for judicial proceedings").

50. In discussing the history of witness immunity, the Pennsylvania Supreme Court expounded that "[t]he origin of the rule was the great mischief that would result if witnesses in courts of justice were not at liberty to speak freely, subject only to the animadversion of the court . . . . [t]he rule is inflexible that **no action will lie for words** spoken or **written in the course of giving evidence**." *Post v. Mendel*, 507 A.2d 351, 354 (Pa. 1986) (quoting *Kemper v. Fort*, 67 A. 991, 992-93 (Pa. 1907) (emphasis added).

51. For example, one Pennsylvania trial court has expressly noted that "it seems clear that the *Panitz* court intended that witness immunity be extended to experts -- **not only as to their trial testimony, but also as to their reports prepared pretrial**." *Rohrer v. Connelly*, 48 Pa. D. & C.4th 76, 83 (Ct. Com. Pl. 2000) (emphasis added);[2] *See also Koral v. Mixon*, No. 04154, 2012 Phila. Ct. Com. Pl. LEXIS 408, at *7 (Ct. Com. Pl. Nov. 17, 2012) ("Pennsylvania law does not permit an expert to be held civilly liable

---

[2] *See Constantakis v. Bryan Advisory Servs., LLC*, 275 A.3d 998, 1025 (Pa. Super. 2022) ("**recognizing an absolute privilege for** judges, lawyers, litigants, and **witnesses regarding statements made during legal actions**") (citing *Panitz v. Behrend*, 632 A.2d 562 (Pa. Super. 1993)).

to an opposing party merely by submitting an expert opinion in the course of litigation") (citing *LLMD*, 740 A.2d at 191).

52.    Courts throughout multiple state and federal jurisdictions have extended the witness immunity doctrine to include the work an expert witness performed in preparation of their testimony. *See Urbina v. Carson*, 1:07-CV-00153, 2007 U.S. Dist. LEXIS 74890, at *27 (E.D. Cal. Sept. 25, 2007) ("The fact gathering function of an expert should not be deterred and is subject to absolute witness immunity. The role and conduct of testifying experts in preparing for and giving testimony is testimonial in nature"); *See also Sandler v. Sweet*, 84 N.E.3d 544 (Ill. App. Ct. 2017) (extending absolute privilege to expert report prepared by expert witness); *Hooper Hathaway, PC v. Atlas Techs., LLC*, No. 354976, 2022 Mich. App. LEXIS 1013, at * (Mich. App. Ct. Feb, 24, 2022) ("Witness immunity includes not just witness testimony, but 'necessarily extends to any other materials or evidence prepared by the witness for the intended benefit of the court'") (citing *Estate of Voutsaras v. Bender*, 929 N.W.2d 809, 813 (Mich. App. Ct. 2019)).

53.    District courts within the Third Circuit have also extended the witness immunity doctrine to pre-trial communications and expert examinations. For example, in *Serchia v. Macmillan*, No. 96-2910, 1997 U.S. Dist. LEXIS 3101 (E.D. Pa. Mar. 20, 1997), the district court granted

defendants' (a doctor and hospital retained by the government as expert witnesses) motion to dismiss under Rule 12(b)(6) because the plaintiff failed to state a claim upon which relief could be granted in light of the doctors' immunity. Specifically, the district court explained "the privilege is not limited to communications which are actually made in court. 'Witness immunity should and does extend to pre-trial communications. The policy of providing for reasonably unobstructed access to the relevant facts is no less compelling at the pre-trial stage of judicial proceedings.'" *Serchia v. Macmillan*, No. 96-2910, 1997 U.S. Dist. LEXIS 3101, at *10 (E.D. Pa. Mar. 20, 1997) (quoting *Moses v. McWilliams*, 549 A.2d 950, 958 (Pa. Super. 1988)).

54.    The Amended Complaint, to the extent it relies on statements made by Nikiper in preparation of his report or of his testimony and during his actual testimony in the Dauphin County Action, fails to state a claim and should be dismissed pursuant to Rule 12(b)(6). Defendants, as expert witnesses retained by the Commonwealth, enjoy immunity from civil liability for both their testimony in judicial proceedings and for the preparation of pre-trial expert reports and communications related to those reports.

55.    In the CFAA claim (Count I), Plaintiff contends that Defendants violated the CFAA because they intentionally accessed the Hard Drive and

Dongle without POM's authorization and knowingly with the intent to defraud. Amended Complaint at ¶¶ 142-45. Moreover, Plaintiff claims that Defendants knowingly caused the transmission of, among other things, program information and code, and also caused damage to the Hard Drive and Dongle. Amended Complaint at ¶¶ 146-49.

56.    Additionally, with respect to the Computer Spyware Act claim (Count III), Plaintiff asserts that Defendants violated the Computer Spyware Act by "copying and accessing" the POM Game without authorization. Amended Complaint ¶¶ 169-71.

57.    In the common law claim (Count II), Plaintiff contends that Defendants misappropriated and misused "confidential business information," such as the Excusable File, boot loader, Unencrypted Data Partitions, and Dongle, during the expert examination of the POM Games as requested by the Commonwealth and as allowed by the Judge in the Dauphin County Action.

58.    This is the exact type of conduct that the Witness Immunity Doctrine seeks to protect. Defendants were retained by the Commonwealth to investigate and analyze seized POM Games in connection with the Dauphin County Action and investigations in which the Commonwealth is engaged.

*See* Exhibit I to Amended Complaint, Transcript of November 22, 2022 Hearing (11/22/22 Tr.) at 148:2-16.

59.    Additionally, with regard to the CFAA and Computer Spyware Act claims, the preparation of the BMM Report was entirely premised on an analysis of the POM Games and, considering that the BMM Report was prepared for ongoing litigation, such conduct is expressly protected.

60.    In sum, under the Witness Immunity Doctrine, Defendants cannot be held civilly liable for preparation of the BMM Report nor their testimony in the evidentiary proceedings before the Dauphin County Court of Common Pleas.

**B. BMM and Nikiper are Immune from Civil Liability Pursuant to a Statutory Exception Enumerated in the CFAA**

61.    Plaintiff's claims under the CFAA also fail because the CFAA expressly permits lawfully authorized investigations by government agencies. Specifically, the CFAA contains a statutory exception to claims of unauthorized computer access for the "lawfully authorized investigative . . . activity of a law enforcement agency of . . . a State." 18 U.S.C. § 1030(f).

62.    The term "lawfully authorized" should not be limited to only a warrant, otherwise the statute would have said so. A court order could and should serve the same purpose. In this matter, we have such an order authorizing the inspection, the filing of the report, and expert testimony in the form of a scheduling order in the

-21-

Dauphin County Action. A true and correct copy of the Scheduling Order is attached as Exhibit B.

63.    The Scheduling Order specifically permits the Commonwealth to prepare and serve an "expert report" on the issue of whether the POM Games were games of skill or games of chance. From the Scheduling Order, it does not appear that the Plaintiff objected to the Commonwealth's retention of an expert, the examination of the machines, the preparation of a report, and subsequent testimony.

64.    Here, the Commonwealth was engaged in an investigation of the POM Games and retained Defendants as expert witnesses to examine the POM Games, draft an expert report, and testify as an expert witness. *See* Exhibit I to Amended Complaint, Transcript of November 22, 2022 Hearing (11/22/22 Tr.) at 148:2-16. Additionally, at the direction of the Commonwealth, Defendants conducted an analysis of the POM Games and prepared the BMM Report. *Id*. at 148:2-6. The examination of the POM Games and the resulting report were also authorized by the Court in the Dauphin County Action. (See Exhibit B).

65.    In the Dauphin County Action, the Court was charged with determining whether the POM Games were games of skill, as claimed by POM, or games of chance, as argued by the Commonwealth. The Court specifically authorized expert reports and testimony regarding this issue.

66.    Importantly, in the underlying state court action, the Dauphin County Court of Common Pleas declined to discuss the "[l]awfulness of the seizure" of the POM Games because the court "did not hear testimony about the lawfulness of the seizure, and Petitioners did not address this issue in their Proposed Findings of Fact and Conclusions of Law." *See In re Three Pa. Skill Amusement Devices*, No. 2022-CV-06333-MD, 2023 Pa. Dist. & Cnty. Dec. LEXIS 39, at *2 n. 1 (Ct. Com. P. Dauphin Mar. 23, 2023).

67.    Given the express authorization by the Dauphin County Court of Common Pleas to prepare a report and testify regarding their findings it cannot be said that the Defendants' conduct was not lawfully authorized. If Plaintiff wanted to protect its proprietary information from scrutiny by the Defendants, it should have done so before the Dauphin County Court of Common Pleas expressly authorized the report and resulting testimony.

68.    Moreover, BMM and Mr. Nikper, as experts retained by the Commonwealth, acted at the direction of the Commonwealth in investigating the POM Games and reporting their findings to the Commonwealth. The Commonwealth retained BMM and Mr. Nikiper directly for the purposes of analyzing games that the Commonwealth had already seized. Neither BMM or Mr. Nikper participated in the Pennsylvania State Police seizure of the POM Games. Importantly, the Office of the Attorney General for the Commonwealth Expert

Consultant Agreement expressly authorized Defendants to investigate and examine the POM Games:

> As an expert in gaming test labs, your services shall include, but not necessarily be limited to, the following: review and analysis of case pleadings and POM games to determine if game outcome is by skill or by chance; confer and discuss with Counsel; prepare expert report and possible trial testimony

Exhibit A to Motion to Dismiss at 1.

69.     It is inconceivable, in light of the immunity granted to BMM and Mr. Nikiper as expert witnesses retained by the Commonwealth, and pursuant to the statutory exception of Section 1030(f), how BMM or Mr. Nikiper could be held liable under the CFAA for activity expressly sanctioned and authorized by the Commonwealth and the Court in the Dauphin County Action.

### C. The Amended Complaint Fails to State a Claim Under the CFAA.

70.     Notwithstanding the fact that the Defendants enjoy immunity for their investigation, report, and testimony, the CFAA claim should otherwise be dismissed as Plaintiff has failed to plead a claim under the CFAA.

71.     Plaintiff's claim under Section § 1030(a)(4) of the CFAA is unsustainable. To state a civil claim under CFAA § 1030(a)(4), a plaintiff must satisfy four elements: "(1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and with 'intent to defraud;' and (4) as a result has

'further[ed] the intended fraud and obtain[ed] anything of value.'" *Sealord Holdings, Inc. v. Radler*, No. 11-6125, 2012 U.S. Dist. LEXIS 29878, at *20 (E.D. Pa. Mar. 6, 2012) (quoting *P.C. Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005)).

72.    With regard to element four of the *P.C. Yonkers, Inc.* analysis, Plaintiff has failed to show that Defendants "furthered the intended fraud and obtained anything of value." 428 F.3d at 508. Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, the Third Circuit has held "in cases subject to Rule 9(b), the plaintiff must articulate the 'who, what, when, where, and how of the events at issue.'" *Dac v. Booking Holdings Inc.,* No. 20-1191, 2022 U.S. Dist. LEXIS 193027, at *22 (D. Del. Oct. 24, 2022) (quoting *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019)).

73.    The District Courts within the Third Circuit have found that the pleading requirements of Rule 9(b) do not apply to the third element of the *P.C. Yonkers, Inc.* analysis (i.e. "intent to defraud"), yet have apparently remained silent on whether Rule 9(b)'s heightened pleading standard applies to the fourth element (i.e. "furthered the intended fraud").

74.    In a recent opinion in the District of Delaware, Judge Bryson evaluated the interplay between Rule 9(b) and Section 1030(a)(4), noting that while "[a] number of district courts have addressed the question whether Rule 9(b) applies to CFAA claims based on section 1030(a)(4) and, if so, the extent to which it does . . . . the law on this issue is a mess." *Dac*, 2022 U.S. Dist. LEXIS 193027, at \*22. Judge Bryson went further, noting that with regard to the "furthered the intended fraud" element, multiple district courts outside of the Third Circuit have either "remain[ed] silent as to whether the 'further the intended fraud' element is subject to those requirements" or "held that the Rule 9(b) pleading standard applies to the 'furthers the intended fraud' element, but not to the 'intent to defraud' element." *Id*. at \*23 - \*24 (citing a large compilation of cases).

75.    Here, Plaintiff contends that Defendants obtained "highly valuable intellectual property," including, among other things, the Hard Drive and Dongle. Amended Complaint at ¶¶ 144-45. However, Plaintiff omits the "how of the events at issue." *See UPMC*, 946 F.3d at 176.

76.    It is important to note, once again, that Defendants were retained government expert witnesses during their examination of the POM Games. Defendants did not simply evaluate and examine the POM Games because they wanted to, rather they were hired by the Commonwealth to conduct an expert analysis and prepare the BMM Report. Plaintiff's omission of the "how of the events

at issue," as required under the heightened pleading standard of Rule 9(b), appears to be a tactical choice.

77.     If Plaintiff is forced to admit that Defendants did not examine the POM Games on their own, but rather were expressly directed to do so by the Commonwealth in their capacity as expert witnesses, then Plaintiff is forced to acknowledge that Defendants are protected from civil liability under the Witness Immunity Doctrine. In other words, if the Plaintiff is forced to acknowledge that Defendants are protected expert witnesses, then Plaintiff's Amended Complaint is unsustainable because of Defendants immunity from civil liability.

78.     Plaintiff's failure to plead with specificity how Defendants furthered the intended fraud and obtained anything of value is fatal to the Plainiff's CFAA claim.

## IV.   CONCLUSION

79.     For the foregoing reasons, Defendants are immune from civil liability under the Witness Immunity Doctrine because they were expert witnesses retained by the Commonwealth. Additionally, the CFAA provides for a statutory exception to liability for activity related to government investigations. Accordingly, Defendants respectfully request that this Honorable Court grant Defendants Motion to Dismiss and dismiss this action with prejudice.

Respectfully submitted,

COOPER LEVENSON, P.A.

Dated:  June 12, 2023

_____

William P. Rubley, Esquire
Attorney I.D. No. 207054
1415 Marlton Pike (Route 70) East
Cherry Hill Plaza – Suite 205
Cherry Hill, NJ 08034
Phone (856) 795-9110
Fax 856-795-8641
wrubley@cooperlevenson.com
*Counsel for Defendants BMM North
America, Inc. and Peter Nikiper*