# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

No. 1:23-CV-00579-JPW

---

POM OF PENNSYLVANIA, LLC,

*Plaintiff,*

v.

BMM NORTH AMERICA, INC. AND PETER NIKIPER,

*Defendants.*

---

**PLAINTIFF POM OF PENNSYLVANIA, LLC'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

---

Matthew H. Haverstick (No. 85072)
Eric J. Schreiner (No. 76721)
Edward T. Butkovitz (No. 309565)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Eml: mhaverstick@kleinbard.com
eschreiner@kleinbard.com
ebutkovitz@kleinbard.com

*Attorneys for Plaintiff POM of
Pennsylvania, LLC*

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................... 1

II.  ARGUMENT .................................................................................... 4

    A.  Defendants are not immune from the claims in the Amended
    Complaint based on witness immunity ..................................... 4

    B.  The CFAA's Law Enforcement Exception does not protect
    Defendants ............................................................................. 11

    C.  POM has pleaded a valid claim under Section 1030(a)(4) of the
    CFAA in the Amended Complaint ........................................... 14

III.  CONCLUSION ................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*Atiyeh v. Frederick Group, LLC*, No. 2482 EDA 2018, 2019 WL 3823972, at \*1-\*2 (Pa. Super. Aug. 15, 2019) ................................................. 10

*Briscoe v. LaHue*, 460 U.S. 325 (1983) ................................................. 8, 9

*Dac v. Booking Holdings Inc.*, 2022 U.S. Dist. LEXIS, at \*22 (D. Del. Oct. 24, 2022) ............................................................................... 20

*Handfield v. Howell*, No. 1479 EDA 2019, 2020 Pa. Super. Unpub. LEXIS 498 at \*2 and \*9 (Pa. Super. Feb. 11, 2020) ....................................... 10

*Hoffman v. Rashid*, No. 07-3159, 2009 U.S. Dist. LEXIS 120708, at \*1-\*2, \*15 (E.D. Pa. Dec. 28, 2009) ......................................................... 10

*Hooper Hathaway, PC v. Atlas Techs., LLC*, No 354976, 2022 Mich. App. LEXIS 1013 (Mich. App. Ct. Feb. 24, 2022) ........................................ 11

*LLMD of Michigan, Inc. v. Jackson-Cross Co.*, 740 A.2d 186 (Pa. 1999) 8, 9, 10, 11

*Pollina v. Dishong*, 98 A.3d 613, 619 (Pa. Super. 2014) .......................... 9

*Rohrer v. Connelly*, 48 Pa. D.&C.4th 76, 83 ............................................. 9

*Sandler v. Sweet*, 84 N.E.3d 544 (Ill. App. Ct. 2017) ............................. 11

*Sealord Holdings, Inc. v. Radler*, 2012 WL 707075, at \*6 (E.D. Pa. March 6, 2012) ............................................................................................ 19

*Serchia v. Macmillan*, 1997 U.S. Dist. LEXIS 3101 (E.D. Pa. Mar. 20, 1997) ................................................................................................ 10

*Urbina v. Carson*, 1:07-CV-00153, 2007 U.S. Dist. LEXIS 74890 (E.D. Cal. Sept. 25, 2007) ........................................................................ 11

**Statutes**

18 U.S.C. § 1030 ........................................................................ passim

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| POM OF PENNSYLVANIA, LLC, | : | No. 1:23-CV-00579-JPW |
|  | : | (Hon. Jennifer P. Wilson) |
| *Plaintiff,* | : |  |
|  | : | JURY TRIAL DEMANDED |
| v. | : |  |
|  | : | *Electronically Filed* |
| BMM NORTH AMERICA, INC. | : |  |
| and PETER NIKIPER, | : |  |
|  | : |  |
| *Defendants.* | : |  |
|  | : |  |

**PLAINTIFF POM OF PENNSYLVANIA, LLC'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**

## I.    INTRODUCTION

Defendants BMM North America, Inc. and Peter Nikiper have

filed their Motion to Dismiss Amended Complaint, seeking to dismiss

Plaintiff POM of Pennsylvania's Amended Complaint on three separate

grounds. Each of Defendants' arguments lack any merit.

First, Defendants argue that the Amended Complaint should be

dismissed because the witness immunity doctrine allegedly immunizes

them from any liability for their unlawful conduct. *See* Defendants'

Memorandum of Law in Support of the Motion to Dismiss Amended Complaint (Docket No. 16) (Defendants' MOL) at p. 10-16, §IV(A). This argument is based on a basic misunderstanding of the witness immunity doctrine and the fundamental misconception that it somehow immunizes conduct by witnesses that is independently actionable. While the doctrine may provide immunity for claims based on an expert witness's testimony or opinions, that is not what the claims in the Amended Complaint are based upon–they are based on Defendants' *conduct*, primarily their unlawful accessing of POM's Skill Game[1] and certain components and software contained in the Skill Game. Consequently, the witness immunity doctrine does not immunize Defendants from the consequences of their unlawful acts.

Second, Defendants contend that they are protected from POM's claims under the Computer Fraud and Abuse Act (the CFAA), 18 U.S.C. § 1030, based on the CFAA's exception for "lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency" (the Law Enforcement Exception).[2] *See* Defendants' MOL at

---

[1] This term is used herein as defined in the Amended Complaint.

[2] This argument only addresses POM's CFAA claim in Count I of the Amended Complaint. It does not address POM's Misuse of Confidential Business Information claim in Count II of the Amended Complaint or POM's claim for

2

p. 16-19, §IV(B). The Law Enforcement Exception, however, does not encompass Defendants or their activities described in the Amended Complaint. Therefore, it provides no refuge to Defendants for their unlawful conduct.

Third, Defendants argue that in the Amended Complaint POM failed to plead a valid claim under Section 1030(a)(4) of the CFAA.[3] *See* Defendants' MOL at p. 19-21, §IV(c). Specifically, Defendants contend POM has not pled the fourth element of this claim, *i.e.*, that Defendants "furthered the intended fraud and obtained anything of value." *Id*. This argument also fails, as POM's detailed Amended Complaint sufficiently pleads this element of a claim under Section 1030(a)(4).

For all these reasons, as explained in more detail below, the Court should deny Defendants' Motion.

---

violation of the Pennsylvania Consumer Protection Against Computer Spyware Act in Count III of the Complaint. *See* Amended Complaint (Docket No. 14).

[3] This argument only addresses POM's Section 1030(a)(4) claim under the CFAA. In the Amended Complaint, POM also asserts claims under Sections 1030(a)(2), (a)(5)(A) and (a)(5)(B) of the CFAA. *See* Amended Complaint (Docket No. 14) at ¶¶142-143 and 146-149. This argument does not address POM's claims under these other sections of the CFAA or POM's claims in Counts II and III of the Amended Complaint.

3

## II.   ARGUMENT

### A.   Defendants are not immune from the claims in the Amended Complaint based on witness immunity.

Defendants contend that the Court should dismiss the Amended Complaint because as expert witnesses they are immune from any liability under the witness immunity doctrine. *See* Defendant MOL at p. 10-16, §IV(A). In essence, Defendants contend that the witness immunity doctrine provides absolute immunity to an expert for any claim connected to the role as an expert. The basic flaw in Defendants' argument is that while the witness immunity doctrine may immunize an expert witness from liability for claims based on testimony, opinions and statements set forth in a report, it is not absolute and does not immunize an expert witness from liability for *conduct* that is otherwise tortious or actionable. Indeed, Defendants vastly overstate the scope of the witness immunity doctrine. It does not immunize an expert witness from liability for anything the witness does in connection with serving as an expert witness, as Defendants appear to contend.

The cases cited by Defendants in their Memorandum of Law fully support this view of the expert witness doctrine. The two primary cases Defendants cite are the Pennsylvania Supreme Court's decision in

4

*LLMD of Michigan, Inc. v. Jackson-Cross Co.*, 740 A.2d 186 (Pa. 1999) and the United States Supreme Court's decision in *Briscoe v. LaHue*, 460 U.S. 325 (1983). *See* Defendant MOL at p. 11-12. Neither of these decisions support Defendants' view of the broad reach of the witness immunity doctrine.

*LLMD* demonstrates Defendants' mischaracterization and overstatement of the witness immunity doctrine. In fact, while the Pennsylvania Supreme Court in *LLMD* ratified the general principle that witnesses cannot be held liable for "communications related to the proceedings" in which they participated, 740 A.2d at 188, the Court *did not* hold the doctrine was absolute. To the contrary, the central holding in *LLMD* is that expert witnesses, in particular, can be held liable for negligent conduct when the alleged negligence is "not premised on the substance of the expert's opinion." *See id.* at 191. In other words, the Court held an expert witness could be challenged for negligence "in formulating" an opinion, but not for the substance of that opinion. *See id.; see also Rohrer v. Connelly*, 48 Pa. D.&C.4th 76, 83 (C.P. Dauphin 2000) (finding witness immunity doctrine did not immunize expert witness where plaintiff alleged negligence in preparation of

5

expert report) (cited at p. 13 of Defendants' MOL). As a further significant note on *LLMD*, the Court couched the doctrine in terms of witness "communications," *see* 740 A.2d at 188, which is consistent with other opinions describing the witness immunity doctrine solely in terms of its protection of *statements. See, e.g., Pollina v. Dishong*, 98 A.3d 613, 619 (Pa. Super. 2014) ("Thus, the privilege exists because there is a *realm of communication* essential to the exploration of legal claims that would be hindered were there not the protection afforded by the privilege." (emphasis added)).

The Court in *Briscoe* focused entirely on the issue of civil liability based on a witness's *testimony* in court. *See* 460 U.S. at 326-29. Indeed, the excerpt from this case quoted in Defendants' Memorandum of Law makes this clear. *See* Defendants' MOL at p. 11 ("The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings …." (quoting *Briscoe*, 460 U.S. at 330-334)).

Several other Pennsylvania cases on which Defendants rely involving witness immunity likewise discussed the witness immunity doctrine in the context of claims against witnesses based on their

6

testimony or expert reports. *See* Defendants' MOL at p. 12-13; *see also*

*Handfield v. Howell*, No. 1479 EDA 2019, 2020 Pa. Super. Unpub.

LEXIS 498 at *2 and *9 (Pa. Super. Feb. 11, 2020) (claim based on

expert report and trial testimony); *Hoffman v. Rashid*, No. 07-3159,

2009 U.S. Dist. LEXIS 120708, at *1-*2, *15 (E.D. Pa. Dec. 28, 2009)

(claim based on trial testimony); *Atiyeh v. Frederick Group, LLC*, No.

2482 EDA 2018, 2019 WL 3823972, at *1-*2 (Pa. Super. Aug. 15, 2019)

(claim based on appraisal report).

Serchia v. Macmillan, 1997 U.S. Dist. LEXIS 3101 (E.D. Pa. Mar.

20, 1997), cited by Defendants, also is distinguishable. *See* Defendants'

MOL at p. 14-15. This decision predates *LLMD*, so the court did not

have the benefit of the Pennsylvania Supreme Court's ruling in *LLMD*.

Moreover, the *Serchia* court's specific ruling—that "the Pennsylvania

Supreme Court would recognize an absolute privilege to protect adverse

expert witnesses from malpractice suits based on their examination of

an opposing party," *id.* at *16, is not relevant in this case and has been

undermined by the Pennsylvania Supreme Court's subsequent decision

in *LLMD*. In short, none of these Pennsylvania cases support

7

Defendants' current position that the witness immunity doctrine bars POM's claims.[4]

The claims in the Amended Complaint are not based on Nikiper's testimony in in the Dauphin County Court of Common Pleas, other communications, or any statements or opinions in Nikiper's report.[5] Rather, they are based on him unlawfully accessing the Skill Game and its internal components, without any authorization, to improperly view

---

[4] Defendants also cite three out of state cases: *Urbina v. Carson*, 1:07-CV-00153, 2007 U.S. Dist. LEXIS 74890 (E.D. Cal. Sept. 25, 2007); *Sandler v. Sweet*, 84 N.E.3d 544 (Ill. App. Ct. 2017); and *Hooper Hathaway, PC v. Atlas Techs., LLC*, No 354976, 2022 Mich. App. LEXIS 1013 (Mich. App. Ct. Feb. 24, 2022). *See* Defendants MOL at p. 14. These cases do not involve Pennsylvania law and are not relevant. Furthermore, they are readily distinguishable. *Urbina* involved what the court described as "the defense of absolute witness immunity available in §1983 suits." *See* 2007 U.S. Dist. LEXIS at *23. This case is not a §1983 suit and, as the *LLMD* court recognized, witness immunity is not absolute under Pennsylvania law. *Sandler* involved claims against an expert witness "based exclusively upon [the expert's] original and supplemental reports." *See* 84 N.E.3d at 547. Citing the "general rule" that "witnesses enjoy an absolute privilege from civil suit for statements made during judicial proceedings," *id.* at 551, the court held that this rule extended to expert reports, *id.* at 552, and, therefore, statements in the expert's reports were "absolutely privileged." *Id.* at 553 ("In this case, the only wrongful conduct alleged in the plaintiff's amended complaint arose out of [the expert's] written reports in which he opined that the plaintiff did not suffer a brain injury. … [S]uch statements are absolutely privileged."). Here, the claims against BMM are not based on opinions in an expert report. Similarly, in *Hooper Hathaway*, the claim against the expert rested "entirely on deficiencies in the expert report." *See* 2022 Mich. App. LEXIS at *27. Consequently, none of these cases support Defendants' argument that the witness immunity doctrine bars POM's claims.

[5] While the Amended Complaint references Nikiper's report and court testimony, it does so only because the report and his testimony describe the conduct in which he engaged. The claims in the Amended Complaint are not based on statements in Nikiper's report, his opinions, or the substance of any of his cited testimony.

8

the internal operations of the Skill Game and certain aspects of its software. In other words, they are based on Nikiper's *conduct.* For example, the key allegations underlying the claims in the Amended Complaint are that Nikiper:

- Opened the secure Skill Game cabinets—without any authorization or consent—to access and examine the internal contents, including the Hard Drive,[6] the Dongle, the computer motherboard and the boot loader, *see* Amended Complaint at ¶¶102-104, 107-108, 122 and 124;

- Reviewed the program storage media inside the Skill Game, *id.* at ¶119;

- Made forensic copies of the program storage media and Hard Drive, *id.* at ¶¶120-121; and,

- Separately "Open[ed] up" and examined a Dongle, *id.* at ¶125.

Based on *this conduct*, POM brought claims for violation of the CFAA, the Pennsylvania Consumer Protection Against Computer Spyware Act, and for misuse of confidential business information.[7] This unlawful *conduct* is not protected by the witness immunity doctrine.

---

[6] Capitalized terms are used herein as defined in the Amended Complaint.

[7] POM also has alleged in the Amended Complaint that everything accessed by Nikiper inside the Skill Game cabinet is POM's confidential business information, *see* Amended Complaint at ¶¶21-89, and that Nikiper admitted he understood that the information on the Skill Game's internal components was sensitive and knew that he and BMM did not sign a non-disclosure agreement with POM, *id.* at ¶¶129-130.

9

In the end, Defendants simply misconstrue the witness immunity doctrine when they contend that "this is the exact type of conduct that the witness immunity doctrine seeks to protect." *See* Defendants' MOL at p. 16. As the cases discussed above demonstrate, the witness immunity doctrine does not protect Defendants from this conduct. Indeed, Defendants did not even have to engage in this conduct. Nikiper could have given the opinions in his expert report simply by playing the Skill Game or observing game play, as he acknowledged in his report and as other experts retained by the Commonwealth have done. *See* Amended Complaint at ¶¶132-134.

Defendants' view of witness immunity, taken to its logical (or illogical) conclusion, would mean that an expert witness—with impunity—could physically break into a party's place of business and steal information and equipment for use in preparing an expert report (which is analogous to what happened here). While this example may be extreme, it directly follows from Defendants' explanation of the purported scope of the witness immunity doctrine and, thus, illustrates the flaw in Defendants' argument. Simply stated, being an expert

witness does not give a witness carte blanche to engage in whatever conduct they choose in pursuit of their expert opinion.

In sum, the witness immunity doctrine is inapplicable in this case. Defendants argue that they "cannot be held civilly liable for preparation of the BMM Report nor Nikiper's testimony in the proceedings in the Dauphin County Action." *See* Defendants' MOL at p. 16. But POM is not trying to hold Defendants liable for anything Nikiper stated in the report or said in his testimony; rather, POM seeks to hold Defendants liable because Nikiper illegally accessed the Skill Game and its components. Defendants are not immune and cannot evade the consequences of this unlawful conduct by hiding behind the doctrine. Accordingly, the Court should reject Defendants' attempt to dismiss the Amended Complaint based on the witness immunity doctrine.

### B.    The CFAA's Law Enforcement Exception does not protect Defendants.

Defendants next contend that POM's CFAA claims fail as a matter of law because Defendants' conduct allegedly is permitted under the Law Enforcement Exception to the CFAA. *See* Defendant MOL at p. 16-19, §IV(B). The Court should reject this argument because the Law Enforcement Exception, by its plain terms, does not apply to

11

Defendants or their actions described in the Second Amended Complaint.

The Law Enforcement Exception provides as follows:

> This section does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States.

18 U.S.C.A. §1030(f). This provision does not apply for three reasons.

*First*, Defendants' conduct was not "lawfully authorized." Defendants acknowledge that their conduct was not authorized by any warrant because they contend the term "lawfully authorized" should not be limited to only a warrant, although they cite no case law to support this contention. *See* Defendants' MOL at p. 17. Instead, they argue that a court order could serve as the necessary authorization under the Law Enforcement Exception (but also cite no case law to support this claim) and point to the October 4, 2022 Scheduling Order issued by the Dauphin County Court of Common Pleas. *Id.*; *see also id.* at Exhibit B. Even if a court order authorizing certain conduct could satisfy the Law Enforcement Exception, the October 4th Scheduling Order is not such an Order. This Order did not authorize anything. It is a simple scheduling

12

order that, *inter alia,* set a deadline for the Commonwealth to serve an expert report. *Id.* at Exhibit B. It most certainly did not authorize Defendants to forcibly break into the Skill Game and access its confidential internal components.[8] Defendants' assertion that their activity was "expressly sanctioned and authorized by the … Court in the Dauphin County Action," *see id.* at 19, is pure fiction.

*Second*, the Law Enforcement Exception covers "investigative, protective, or intelligence activity." *See* 18 U.S.C.A. §1030(f). Defendants were acting as expert witnesses in an administrative return of property proceeding. They were not investigating any potential criminal activity or otherwise participating in "investigative, protective, or intelligence activity."

*Third*, the Law Enforcement Exception requires that the activity be conducted by "a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States." Defendants are none of those things. Defendants

---

[8] Defendants also make the point that "[n]either BMM or Nikiper participated in the seizure of the POM Games." *See* Defendants' MOL at p. 18. This further undermines Defendants' claim that their conduct was lawfully authorized. Having not been a participant in the initial seizure of the Skill Games, how could they be lawfully authorized to break into them after they were seized?

13

appear to claim that they satisfy this requirement because they were retained as experts by the Commonwealth, but the language of the statute is clear, and it does not include experts retained by an entity that may fit within the Law Enforcement Exception.[9]

In short, the Law Enforcement Exception does not apply to Defendants, and they cannot rely on it to avoid POM's CFAA claims.

## C.    POM has pleaded a valid claim under Section 1030(a)(4) of the CFAA in the Amended Complaint.

Defendants' final argument is that POM's CFAA claim pursuant to Section 1030(a)(4) fails as a matter of law because POM has not sufficiently pleaded the claim. *See* Defendant MOL at p. 19-21, §IV(C). In particular, Defendants claim that POM has not pleaded the fourth element of this claim—that Defendants "furthered the intended fraud

---

[9] Defendants cite to their Consultant Agreement with the Office of the Attorney General in support of this claim, but this Agreement raises more questions than it answers. *See* Defendants' MOL at p. 18-19 and Exhibit A. Specifically, the Consultant Agreement is dated December 13, 2021 and by its terms terminated on June 30, 2022. *Id.* at Exhibit A. The return of property proceeding in the Dauphin County Court of Common Pleas that underlies the claims against Defendants in the Amended Complaint was not even initiated until August 23, 2022, when petitioners filed their petition for return of property. *See* Amended Complaint at ¶95. Thus, Defendants entered into the Consultant Agreement more than eight months before the return of property proceeding commenced and the Consultant Agreement terminated nearly two months before the return of property proceeding commenced. It is difficult to understand how an agreement that terminated prior to the return of property proceeding even commencing could have any relevance to Defendants' conduct in connection with the return of property proceeding.

and obtained anything of value." *Id.* at p. 19-20. The Court should reject this argument because the allegations of POM's Amended Complaint adequately plead this element of POM's CFAA claim under Section 1030(a)(4).

Defendants appear to suggest that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to pleading this fourth element. *See* Defendants' MOL at p. 20. Defendants then acknowledge that POM "contends that Defendants obtained 'highly valuable intellectual property,' including, among other things, the Hard Drive and Dongle," but argue that "Plaintiff's omission of the 'how of the events at issue,' as required under the heightened pleading standard of Rule 9(b), appears to be a tactical choice." *Id.* at p. 20. This argument fails for two reasons.

*First*, Rule 9(b)'s heightened pleading standard does not apply to pleading the fourth element of a Section 1030(a)(4) claim. *See, e.g., Sealord Holdings, Inc. v. Radler*, 2012 WL 707075, at *6 (E.D. Pa. March 6, 2012) ("*Yonkers* held that '[c]ontrary to Defendants' contention, in order to state a claim under the CFAA, Plaintiffs need only allege the required elements, pursuant to Rule 8(a)(2)'s notice-

15

pleading standard.' The court in *Yonkers* further held that '[d]espite the fact that the CFAA contains the term 'fraud,' Rule 9(b)'s heightened pleading standard does not apply to claims made under the statute.'" (citations and footnote omitted)). In fact, in their Motion, Defendants admit that no court in the Third Circuit has applied the heightened pleading standard to the fourth element (curiously, however, this discussion is omitted from Defendants' Memorandum of Law).[10] *See* Motion at p. 25-26, ¶¶73-74 (Docket No. 15).

*Second*, even if a heightened pleading standard applied (and it does not), POM has adequately pleaded in the Amended Complaint that Defendants "furthered the intended fraud and obtained anything of value," including the "how of the events at issue." The Amended Complaint contains the following allegations that plainly satisfy this element of a Section 1030(a)(4) CFAA claim:

---

[10] Indeed, the only case cited by Defendants on this issue, an unreported decision from the District of Delaware, does not support their argument at all. *See* Motion at p. 26, ¶74. In that case, the court did not find that the Rule 9(b) pleading standard applied to a Section 1030(a)(4) claim and stated: "But the law on this issue is a mess. Most of the courts that have addressed the issue have held that the special pleading requirements of Rule 9(b) do not apply to claims based on section 1030(a)(4), even though that statute requires proof of 'intent to defraud' and 'conduct that furthers the intended fraud.'" *See Dac v. Booking Holdings Inc.*, 2022 U.S. Dist. LEXIS, at *22 (D. Del. Oct. 24, 2022).

16

- POM's confidential business information inside the Skill Game is highly valuable and the result of the investment of tens of millions of dollars and more than 100,000 personnel hours, *see* Amended Complaint at ¶¶21-74;

- Defendants obtained this valuable material—including the Hard Drive, the Dongle, the computer motherboard and the boot loader—by illegally accessing the Skill Games, *see id.* at ¶¶102-104, 107-108, 119-122 and 124-25;

- An explanation of precisely how Defendants obtained this valuable material, *see id.*;

- Defendants' conduct furthered the fraud of obtaining POM's confidential business information, which was all the more outrageous because BMM is a member of a coalition of casino groups that oppose skill games like the Skill Game and BMM provides services to most major manufacturers in the gaming industry, *see id.* at ¶¶111-112;

- Defendants knew, or should have known, they were improperly accessing POM's confidential business information because they understood this information was sensitive and knew they did not have a non-disclosure agreement with POM, *see id.* at ¶¶128-130;

- "BMM and Nikiper violated 18 U.S.C. §1030(a)(4) in that they knowingly and with intent to defraud accessed the Hard Drive without authorization from POM or Pace-O-Matic, and in furtherance of the intended fraud obtained highly valuable intellectual property and information, including but not limited to the data arrangement and partitions of the Hard Drive; the boot sequence, including direct observation of the boot sequence and information that can be derived from the boot sequence that bears on the operation of the Skill Game; the fact that the Hard Drive uses LUKS encryption to protect the Executable File and its underlying source code; the location of the decryption key

17

that protects the Executable File and its underlying source code; and the contents of the Unencrypted Data Partitions," *id.* at ¶144; and

- "BMM and Nikiper violated 18 U.S.C. § 1030(a)(4) in that they knowingly and with intent to defraud accessed the Dongle without authorization from POM or Pace-O-Matic, and in furtherance of the intended fraud obtained highly valuable intellectual property and information, including but not limited to the Dongle Design Specifications; the Dongle Firmware; and the location of the decryption key that protects the Executable File and its underlying source code," *id.* at ¶144."

These allegations satisfy POM's duty to plead the element that Defendants "furthered the intended fraud and obtained anything of value." Thus, Defendants' challenge fails.

## III.    CONCLUSION

This Court should reject Defendants' arguments for dismissing the Amended Complaint. The witness immunity doctrine and the Law Enforcement Exception to the CFAA do not protect Defendants from the consequences of their unauthorized and unlawful conduct described in the Amended Complaint. In addition, POM has sufficiently pleaded a claim under Section 1030(a)(4) of the CFAA. Therefore, for all of the reasons set forth above, POM respectfully request that the Court deny Defendants' Motion.

18

Respectfully submitted,

Dated:  June 22, 2023

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
Eric J. Schreiner (No. 76721)
Edward T. Butkovitz (No. 309565)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Eml: mhaverstick@kleinbard.com
eschreiner@kleinbard.com
ebutkovitz@kleinbard.com

*Attorneys for Plaintiff POM of
Pennsylvania, LLC*

19

# CERTIFICATION PURSUANT TO LOCAL RULE 7.8(b)(2)

I certify that pursuant to Local Rule 7.8(b)(2) the body of the Brief in Opposition to Motion to Dismiss Amended Complaint contains 3,937 words.

Dated:  June 22, 2023

/s/ Matthew H. Haverstick
Matthew H. Haverstick (No. 85072)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Eml: mhaverstick@kleinbard.com

*Attorneys for Plaintiff POM of Pennsylvania, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| POM OF PENNSYLVANIA, LLC, | : No. 1:23-CV-00579-JPW |
| *Plaintiff,* | : |
| v. | : |
| BMM NORTH AMERICA, INC. and PETER NIKIPER, | : |
| *Defendants.* | : |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2023, upon

consideration of the Motion to Dismiss Amended Complaint by

Defendants BMM North America, Inc. and Peter Nikiper (together,

"Defendants"), and Plaintiff POM of Pennsylvania, LLC's opposition

thereto, it is hereby **ORDERED** that the Motion is **DENIED**.

BY THE COURT:

_____

Hon. Jennifer P. Wilson

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss Amended Complaint to be served via the Court's CM/ECF system on all counsel of record.

Dated:  June 22, 2023

/s/ Matthew H. Haverstick
Matthew H. Haverstick
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Eml: mhaverstick@kleinbard.com
eschreiner@kleinbard.com
ebutkovitz@kleinbard.com

*Attorneys for Plaintiff POM of
Pennsylvania, LLC*