COOPER LEVENSON, P.A.
1415 Marlton Pike East
Cherry Hill Plaza, Suite 205
Cherry Hill, NJ 08034
(856) 795-9110; Fax: (856) 795-8641
By: William P. Rubley, Esq. (I.D. No. 207054)
Trevor R. Waldron, Esq. (I.D. No. 330759)
wrubley@cooperlevenson.com
twaldron@cooperlevenson.com
*Counsel for Defendants BMM North*
*America, Inc. and Peter Nikiper*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

POM OF PENNSYLVANIA, LLC,  :

:        Case No. 1:23-CV-00579-JPW

Plaintiff,        :

:

v.        :

:

BMM NORTH AMERICA, INC.,        :
and PETER NIKIPER,        :

:

Defendants.        :

_____

## DEFENDANT BMM NORTH AMERICA, INC.'S AND PETER NIKIPER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

1

## TABLE OF CONTENTS

**I.  INTRODUCTION** .................................................................................................2

**II.  ARGUMENT** ....................................................................................................3

    **A.  The Witness Immunity Doctrine Immunizes Defendants from the Claims Contained in the Amended Complaint** ..................................3

    **B.  The CFAA's Law Enforcement Exception Shields Defendants from Liability** ..........................................................................................7

**III.  CONCLUSION** ................................................................................................9

i

# TABLE OF AUTHORITIES

**Cases**

*Briscoe v. LaHue*, 460 U.S. 325 (1983)......................................................................4

*LLMD of Michigan, Inc. v. Jackson-Cross Co.*, 740 A.2d 186 (Pa. 1999) ..............4

**Statutes**

18 U.S.C. § 1030(f)..................................................................................................2, 8

**Rules**

Rule 12(b)(6) of the Federal Rules of Civil Procedure...............................................2

ii

## I.    INTRODUCTION

Defendants BMM North America, Inc. and Peter Nikiper (collectively "Defendants"), by and through their counsel, Cooper Levenson, P.A., submit this Reply Brief in further support of their Motion to Dismiss the Amended Complaint (the "Motion to Dismiss"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the supporting Memorandum of Law, ECF Nos. 15-16.

On June 22, 2023, Plaintiff, POM of Pennsylvania, LLC ("Plaintiff" or "POM"), submitted a Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (the "Opposition"). The Plaintiff's Opposition severely misconstrues case law and statutory exceptions to their causes of action. In the Opposition, Plaintiff claims that the common law witness immunity doctrine does not shield an expert witness from liability to them for the opposing party's witness's conduct as an expert witness in pending litigation. Additionally, Plaintiff also asserts that the lawfully authorized investigation activity exception (the "Law Enforcement Exception") contained in the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030(f), does not encompass Defendants' activities as expert witnesses. Plaintiff is mistaken as to the applicability of both the witness immunity doctrine and the Law Enforcement Exception to the present action.

For the reasons that follow, and as explained in detail in the Motion to Dismiss, the Court should grant the Motion to Dismiss and dismiss this action.

## II.    ARGUMENT

### A. The Witness Immunity Doctrine Immunizes Defendants from the Claims Contained in the Amended Complaint.

The witness immunity doctrine applies to all three (3) counts of the Plaintiff's complaint and warrants dismissal of the Amended Complaint in its entirety. In its Opposition, Plaintiff asserts that the witness immunity doctrine is not absolute and does not immunize Defendants from otherwise tortious or actionable conduct. Def's Opp. at p. 4., §II(A). Confusingly, Plaintiff also claims that "[t]he claims in the Amended Complaint are not based on Nikiper's testimony in in the Dauphin County Court of Common Pleas, other communications, or any statements or opinions in Nikiper's report . . . . [but] [r]ather, they are based on him unlawfully accessing the Skill Game and its internal components, without any authorization, to improperly view the internal operations of the Skill Game and certain aspects of its software." Def.'s Opp. at p. 8-9, §II(A). Stated simply, Plaintiff's interpretation of the witness immunity is incorrect and their argument is confusing at best.

In support of Plaintiff's untenable position, Plaintiff claims that the case law Defendants cite in their Motion to Dismiss, specifically, the Supreme Court of Pennsylvania's decision in *LLMD of Michigan, Inc. v. Jackson-Cross Co.*, 740 A.2d 186 (Pa. 1999) and the Supreme Court of the United States decision in *Briscoe v. LaHue*, 460 U.S. 325 (1983), support Plaintiffs position rather than Defendants

because "[n]either of these decisions support Defendants' view of the broad reach of the witness immunity doctrine." Def.'s Opp. at p. 5, §II(A).

In regard to the *LLMD* decision, Plaintiff misconstrues the Pennsylvania Supreme Court's holding in an attempt to support its claims. Contrary to Plaintiff's interpretation of the *LLMD* decision, the Court's decision does not stand for the notion that an opposing party may sue an opposing party's expert witness for their conduct during the preparation of an expert report. In *LLMD*, a party that had hired an expert witness later sued *his own* expert witness for professional malpractice based on breach of an expert services agreement between the parties. *LLMD*, 740 A.2d at 187. Specifically, in the underlying action, the plaintiff hired Charles Seymour as an expert witness on the issue of lost profits. *Id.* at 187. During the trial, when Seymour was cross-examined, it was discovered that his calculations were incorrect and his testimony was ultimately stricken from the record. *Id*. The Court ultimately held that the witness immunity doctrine did not preclude the plaintiff's professional malpractice claim against its formerly retained expert. *Id.* at 191. Importantly, the Court also cautioned:

> that our holding that the witness immunity doctrine does not preclude claims against an expert witness for professional malpractice has limited application. An expert witness may not be held liable merely because his or her opinion is challenged by another expert or authoritative source. In those circumstances, the judicial process is enhanced by the presentation of different views. Differences of opinion will not suffice to establish liability of an expert witness for professional negligence.

*Id*. at 191.

While Plaintiff claims that the *LLMD* decision is not as broad as Defendants assert in the Motion to Dismiss, the reality is that the *LLMD* decision does not support Plaintiff' broad application of liability of an expert witness for conduct performed during the course of their work as an expert witness for an adversary. Stated simply, the *LLMD* decision does not support the proposition suggested by Plaintiff, i.e., that Defendants are somehow open to civil lability to Plaintiff based on Defendants' "conduct," which was requested by the Office of the Attorney General and authorized by the Court of Common Pleas in Dauphin County, and necessary to formulate their expert report. The Plaintiff attempts to the split hairs and argue that its claims arise out of the Defendants' *conduct* and not the Defendants' investigation, analysis, expert report, and expert testimony. There is nothing in the pending case law, nor should there be, that would separate out *conduct* from the investigation and analysis of an expert who is preparing a report and preparing to testify at trial. Plaintiff's Amended Complaint is replete with references to the Mr. Nikkiper's report and his testimony in Dauphin County. If it was really the *conduct* of Mr. Nikkiper being complained of, then why reference his report and testimony at all in the Amended Complaint.

Plaintiff conveniently ignores in its Opposition and the Amended Complaint that Defendants did not simply walk into an establishment that was operating a POM

Game, rip open the POM Game, and begin accessing and examining the POM Games' components and internal parts. Rather, Defendants were retained as expert witnesses by the Commonwealth of Pennsylvania, and expressly authorized by the Pennsylvania Office of the Attorney General (the "OAG") through their expert agreement, and the Dauphin County Court of Common Pleas through the scheduling order, to conduct an examination of the POM Games, issue a report, and then testify as to their findings.

Here, Plaintiff admits that the key allegations underlying the claims in the Amended Complaint are that Nikiper . . . Opened the secure Skill Game cabinets— without any authorization or consent—to access and examine the internal contents, including the Hard Drive, the Dongle, the computer motherboard and the boot loader . . . Reviewed the program storage media inside the Skill Game . . . Made forensic copies of the program storage media and Hard Drive . . . Separately "Open[ed] up" and examined a Dongle." Def.'s Opp. at p. 9, §II(A). This "conduct" did not occur in a vacuum or for Defendants own pleasure, but rather the conduct occurred during the course of Defendants preparation of the BMM Report, which was sanctioned by the Commonwealth and the Court of Common Pleas in Dauphin County.

In sum, while there are clearly novel issues at play in the instant action, Defendants did not engage "carte blanche" in some type of random conduct unrelated to the formation of an expert opinion and the preparation of expert report.

-6-

Rather, Defendants attempted (and were unable to complete the examination due to time constraints) to examine the POM Games in a manner that allowed them to prepare the BMM Report and testify accordingly. Plaintiff's broad interpretation of expert witness civil liability and their mischaracterization of the *LLMD* decision does not support its claims against Defendants.

## B. The CFAA's Law Enforcement Exception Shields Defendants from Liability

Plaintiff next asserts that the Law enforcement Exception contained in the CFAA does not protect Defendants for three reasons: (1) the conduct was not lawfully authorized, (2) the conduct was administrative not investigative, and (3) the exception requires activity by a law enforcement agency. Again, Plaintiff presents a confusing narrative in an attempt to support the untenable claims in the Amended Complaint.

First, Defendants were lawfully authorized to access the POM Games in order to conduct their analysis and prepare the BMM Report and testify. The OAG retained the Defendants for the express purposes of accessing the POM Games, conducting an evaluation of those games, rendering a report, and testifying as to that report. Further, the Court of Common Pleas of Dauphin County expressly permitted the OAG to retain an expert, prepare and serve a report, and to testify as to the Defendants' findings. Plaintiff contends that Defendants cite no case to support this position that authorization from the OAG and the Dauphin Court of Common Please

-7-

is sufficient to invoke the Law Enforcement Exception to the CFAA. However, Defendants were candid with the Court regarding the lack of available case law interpreting the CFAA's Law Enforcement Exception, 18 U.S.C. § 1030(f). Motion to Dismiss at p. 17, § IV(B).

Interestingly, while the CFAA does not expressly define "lawfully authorized investigative activity," the plain reading of the Law Enforcement Exception contained in Section 1030(f) suggests that the investigative conduct of expert witnesses in formulating an expert report or opinion is protected. Second, while the action before the Dauphin County Court of Common Pleas included return of property proceedings, the hearing that Nikiper testified at was expressly defined as an evidentiary hearing. During the evidentiary hearing, Nikiper was required to testify concerning his investigation and analysis of the POM Machines, which was authorized by the OAG and the Court of Common Pleas in Dauphin County. In sum, while Plaintiff claims that Defendants cite no case law to support their argument regarding the Law Enforcements Exception, Plaintiff cites zero case law to the contrary (and zero case law in § II(B) of the Opposition).

### III.   CONCLUSION

For the foregoing reasons, and reasons discussed in the Motion to Dismiss, the Amended Complaint should be dismissed because Defendants' *conduct* in examining the POM Games was part of their investigation and analysis in rendering

an opinion, preparing a report, and testifying, which is all protected activity under the witness immunity doctrine and the Law Enforcement Exception of CFAA. Accordingly, Defendants respectfully request that this Honorable Court grant the Motion to Dismiss and dismiss this action.

Respectfully submitted,

COOPER LEVENSON, P.A

Dated: July 6, 2023

_____
William P. Rubley, Esquire
Attorney I.D. No. 207054
1415 Marlton Pike (Route 70) East
Cherry Hill Plaza – Suite 205
Cherry Hill, NJ 08034
Phone (856) 795-9110
Fax 856-795-8641
wrubley@cooperlevenson.com
*Counsel for Defendants BMM North*
*America, Inc. and Peter Nikiper*

-10-

## CERTIFICATION PURSUANT TO LOCAL RULE 7.8(b)(2)

I certify that pursuant to Local Rule 7.8(b)(2) the body of the Reply

Memorandum of Law in support of the Defendants' Motion to Dismiss contains

1,731 words.

COOPER LEVENSON, P.A

Dated:  July 6, 2023

_____
William P. Rubley, Esquire
Attorney I.D. No. 207054